UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE: )
)
EMANUEL JOSEPH MINARDI, ) CASE NO. 08-11774
) Chapter 7
Debtor. )

# BRIEF ON EXCLUDING
# REAFFIRMATION-AGREEMENT NEGOTIATIONS
# FROM REPRESENTATION OF CHAPTER 7 DEBTORS

A hearing was held on Debtor's proposed Reaffirmation Agreement with Nissan Motor Acceptance Corporation ("Reaffirmation Agreement") on October 28, 2008. The Court noted at the hearing that Debtor's attorney had expressly agreed with Debtor that counsel would not represent him in negotiating the Reaffirmation Agreement and questioned whether that was in the Debtor's best interest. The Court gave Debtor's attorney 10 days to submit a brief on the issue raised by the Court, which is whether an attorney representing a Chapter 7 debtor can expressly exclude from the representation negotiating a reaffirmation agreement on behalf of the debtor.

## I. FACTUAL BACKGROUND

Debtor first contacted the undersigned attorney ("Attorney") about filing a bankruptcy on or about July 1, 2008. As a result of that meeting, Debtor agreed to hire Attorney and he agreed to represent the Debtor in filing a Chapter 7 bankruptcy. Attorney prepared and mailed to Debtor the Bankruptcy Engagement Letter attached as Ex. A. The letter describes the scope of the representation as follows:

> I will charge you a flat fee to assist you in preparing your Chapter 7 bankruptcy petition and schedules, and represent you at the first meeting of creditors. ... The

1

flat fee also covers negotiations with secured creditors to reduce their claims to market value, exemption planning, and preparation and filing of motions pursuant to 11 U.S.C. § 522(2)(A) for avoidance of liens on household goods. ... The flat fee does not cover the cost of any adversary proceedings or other actions which may be filed in connection with your bankruptcy, including dischargeability actions, judicial lien avoidances, and relief from stay actions, or negotiation of reaffirmation agreements. **You may retain me to represent you in those matters, except for reaffirmation agreements**, subject to a mutually agreeable fee arrangement. **You will have to negotiate your own reaffirmation agreements.**

See, Ex. A. The Bankruptcy Engagement Letter was signed by Debtor after which Attorney began working on Debtor's Petition, Schedules, and other filings.

The only limitation on Attorney's representation of Debtor in the engagement letter is that the Debtor would "have to negotiate [his] own reaffirmation agreements." The exclusion of reaffirmation agreements was discussed with Debtor at the time he engaged Attorney. See, Unsworn Declaration attached as Ex. B. Debtor was advised that the purpose of a Chapter 7 bankruptcy is get a discharge from all dischargeable debts, including debts which would otherwise be reaffirmed, and that reaffirmation meant that Debtor would be liable for the reaffirmed debt after his discharge. *Id.* Attorney told Debtor that he did not have to reaffirm any debts, however, Debtor felt that it was in his best interest to do so. *Id.* The Reaffirmation Agreement concerns the debt associated with the purchase of a truck which Debtor uses in his home-remodeling business. *Id.* Attorney advised Debtor that he had a policy of not negotiating reaffirmation agreements because of the potential liability to the creditor for the reaffirmed debt if the Debtor defaulted on it.[1] *Id.*

---

[1] An article in The American Bankruptcy Law Journal entitled, *Nine Traps and One Slap: Attorney Liability under the New Bankruptcy Law*, states, "But BAPCPA disregards this reality and goes a step further by requiring the attorney to certify that the debtor – who has a demonstrated *inability* to pay a reaffirmed debt – is somehow able to pay it. And the penalty for being wrong could be severe: liability to the creditor for what the debtor owes." 79 Am. Bankr. L. J. 283, 291-2 (2005).

The terms of the Reaffirmation Agreement require Debtor to continue making the same payments on the truck which he made before filing his bankruptcy. *Id.* There were no negotiations in connection with the Reaffirmation Agreement. *Id.* It was prepared by Nissan and forwarded to Debtor through Attorney.

Attorney did not negotiate or sign the Reaffirmation Agreement as provided in the Bankruptcy Engagement Letter. As a result, a hearing was scheduled on the Reaffirmation Agreement for October 28, 2008. Attorney was ordered to appear at the hearing because the Court "is unable to determine whether 1) Mr. Dismukes represented Debtor during the course of negotiating the Agreement, but is unable to make the declaration set forth in § 524(c)(3), or 2) Mr. Dismukes did not represent Debtor during the course of negotiating the Agreement." *See,* Order Scheduling Hearing on Debtor's Reaffirmation Agreement with Nissan Motor Acceptance Corporation.

Both Debtor and Attorney appeared at hearing. The Court noted that the Disclosure of Compensation of Attorney for Debtor filed in this case stated that Attorney had agreed with Debtor that the flat fee paid by Debtor did not include "[r]epresentation of the debtors (sic) in ... reaffirmation agreements." Attorney acknowledged that fact to the Court and explained that Attorney was unwilling to accept liability in the event the Debtor defaulted on the reaffirmed debt. The Court expressed its concern about effective representation of Chapter 7 debtors when the representation did not include negotiation of reaffirmation agreements and granted Attorney leave to file a brief on the issue within 10 days. The Court also provided Attorney with two cases concerning the issue, *In re Egwim,* 291 B.R. 559 (Bankr. N.D. Ga. 2003) and *In re DeSantis,* 395 B.R. 162 (Bankr. M.D. Fla. 2007).

3

## ARGUMENT AND AUTHORITY

### A. AN ATTORNEY REPRESENTING CHAPTER 7 DEBTORS MAY LIMIT THE SCOPE OF THE REPRESENTATION.

This case presents the issue of whether an attorney can limit the scope of representation of Chapter 7 debtors by excluding negotiation of reaffirmation agreements, unlike the situations in *In re DeSantis* and *In re Egwim*. In *DeSantis*, the attorney had agreed to represent the Chapter 7 debtor in negotiating the reaffirmation agreement, but failed to do so. As a result, the issue in that case was whether the attorney had properly withdrawn from the representation, not whether he had limited his representation. In *Egwim*, the attorney had agreed to represent the Chapter 7 debtor in negotiating reaffirmation agreements, but not in adversary proceedings. The debtor in *Egwim* acted *pro se* in defending an objection to discharge and motion for relief from the stay.

The courts in both *Egwim* and *DeSantis* recognized that an attorney representing Chapter 7 debtors could limit the scope of services provided by a valid, professionally appropriate contractual limitation. *In re DeSantis*, 395 B.R. at ___ (citing *In re Egwim*). *In re Hodges*, 342 B.R. 616 (Bankr. E.D. Wash. 2006), is in accord when the court held that services contracted for in handling a Chapter 7 case could be limited, provided it was done specifically and with a clear showing of the client consent to the arrangement. *Id.* at 620. The *Hodges* court looked to the Washington State Bar Association Rules of Professional Conduct which allowed for limitations on the scope of a representation if the limitation is reasonable and the client consents after consultation. *Id.*

A synthesis of these cases suggest a case-by-case analysis of when an attorney may limit a Chapter 7 representation. *In re Wagers*, 340 B.R. 391, 398-9 (Bankr. D. Kan.

4

2006), summarized the law on postpetition limitations as follows:

> In fact, however, **while bankruptcy courts have taken differing views of the obligations attorneys undertake to representing clients in filing Chapter 7 bankruptcy petitions, none appears to have allowed the exclusion of all postpetition services.** Attorneys are almost always required to accompany their clients to the meeting of creditors that is scheduled and held only after the petition is filed. Some bankruptcy courts also require attorneys who prepare Chapter 7 petitions to continue to represent the debtors at a minimum in postpetition matters that arise in the main bankruptcy case, such as stay relief motions. In deed, some matters that may arise – objections to the exemptions the debtors have claimed, objections to discharge are based on alleged errors or omissions in the Schedules or Statement of Financial Affairs, and motions to dismiss under § 707(b) for substantial abuse – are so closely related to the advice the attorney gave in the prepetition preparation for filing that the attorney would at least be morally bound, and might be legally bound, to defend the debtor's position against such attacks. Some courts go even further and require the attorney to represent the debtor in any adversary proceedings that might be brought against them.

(Emphasis added). An attorney may limit the scope of the representation of a Chapter 7 debtor in postpetition matters. The question is whether that limitation extends to the negotiation of reaffirmation agreements.

Oklahoma's Rules of Professional Conduct allow an attorney to limit his representation. Rule 1.2©, which concerns the scope of representation, states, "A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent." 5 O.S. Ch. 1, App. 3-A, Rule 1.2. To be valid, a limitation must be express, specific, reasonably, and clearly consented to by the client. The exclusion in the instant case satisfies all these requirements therefore it should be upheld.

## B. IT IS REASONABLE TO EXCLUDE THE NEGOTIATION OF REAFFIRMATION AGREEMENTS FROM THE REPRESENTATION OF CHAPTER 7 DEBTORS.

It is a reasonable limitation on the representation of a Chapter 7 debtor to exclude the negotiation of reaffirmation agreements. The Bankruptcy Abuse Prevention and

Consumer Protection Act expressly contemplates that an attorney may not represent a debtor in the negotiation of a reaffirmation agreement when it requires courts to approve the agreement "[i]n a case concerning **an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection ....**" 11 U.S.C. § 524 (c)(6)(A)(Emphasis added.) The Act addresses the situation by requiring the court to hold a hearing to determine if the reaffirmation agreement imposes an undue hardship and is in the debtor's best interest. The debtor is protected even if not represented by an attorney. The court assumes the role of policing the reaffirmation agreement. This provision of bankruptcy law differentiates the negotiation of reaffirmation agreements from other postpetition representations, such as adversary proceedings, 341 meetings, and objections to discharge.

## C. THE LIMITATION AT ISSUE WAS EXPRESS, SPECIFIC AND THE CLIENT GAVE INFORMED CONSENT TO IT.

The exclusion from representing the Debtor in negotiating reaffirmation agreements is contained in the Bankruptcy Engagement Letter, a copy of which is attached as Ex. A. It was express, specific and the Debtor signed the engagement letter, thereby indicating his consent. The exclusion is express and specific. The parties agreed that Debtor would have to "negotiate [his] own reaffirmation agreements." Clearly, the Debtor consent to negotiating his own reaffirmation agreements when he signed the engagement letter, and that consent was informed. In this case, he understood that reaffirming a debt meant being liable for it even thought Debtor's other debts were discharged. Debtor also understood that he did not have to reaffirm any debts. Attorney explained to Debtor why he declined to negotiate the reaffirmation agreement. Debtor felt it was in his best interest

6

to reaffirm. In short, Debtor understood the consequences of reaffirming debts, but decided to do so anyway. Moreover, there was no negotiating involved in this case. The Reaffirmation Agreement was straightforward and simply obligated the Debtor to continue he prepetition monthly payments. This "garden variety" reaffirmation agreement is different from the "somewhat questionable and difficult reaffirmation negotiations" involved in *DeSantis*.

## III. CONCLUSION

The issue in this case concerns whether Attorney and Debtor could limit the scope of the representation to exclude negotiating reaffirmation agreements. Both bankruptcy law and Oklahoma's Rules of Professional Conduct allow for limitations on the representation of Chapter 7 debtors in postpetition matters. A limitation which is express, specific, reasonable, and consent to by the client is enforceable. The limitation in the instant case satisfies all of these requirements. It is reasonable because 11 U.S.C. § 524 (c)(6)(A) requires the court to police reaffirmation agreements when the debtor is "not represented by an attorney during the course of negotiating" the reaffirmation agreement. the facts of this case demonstrate that the limitation was express, specific and that Debtor knowingly consent to it. The Court should uphold the limitation.

*[signature]*

D.E. Dismukes, OBA #11813
P.O. Box 1114
Tulsa, OK 74101
583-9080

***ATTORNEY FOR DEBTOR***

7

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2008, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants for this case.

*D.E. Dismukes*
D.E. Dismukes

**EXHIBIT A**

# DISMUKES
## LAW OFFICE

1325 E. 15th St., Ste. 201
Post Office Box 1114
Tulsa, OK 74101

ndismukes@earthlink.net
Facsimile (918) 583-5902
Office (918) 583-9080

July 1, 2008

Joe Minardi
845 S. 193rd E. Ave.
Tulsa, OK 74108

**RE: Bankruptcy Engagement Letter**

Dear Joe:

    This confirms our conversations concerning your desire to file bankruptcy. You agree to hire me to represent you and I agree to represent you on the terms outlined in this letter.

    I will charge you a flat fee to assist you in preparing your Chapter 7 bankruptcy petition and schedules, and represent you at the first meeting of creditors. You've given me a check in the amount of $1,000.00. I may charge you up to $1,500.00 depending on the complexity of your case. The flat fee also covers negotiations with secured creditors to reduce their claims to market value, exemption planning, and preparation and filing of motions pursuant to 11 U.S.C. § 522(2)(A) for avoidance of liens on household goods. I will deposit the funds in my trust account and will earn my fee when your bankruptcy is filed. The flat fee does not cover the cost of any adversary proceedings or other actions which may be filed in connection with your bankruptcy, including dischargeability actions, judicial lien avoidances, and relief from stay actions, or negotiation of reaffirmation agreements. You may retain me to represent you in those matters, except for reaffirmation agreements, subject to a mutually agreeable fee arrangement. You will have to negotiate your own reaffirmation agreements.

    You agree pay to any costs and expenses incurred in connection with this representation, including but not limited to, filing fees ($299.00), court costs, mileage, actual expenses of copies, expenses associated with obtaining records, deposition expenses, and any other costs which I, after consultation with you, deem necessary to this matter.

    You may give me documents and things during the course of my engagement. My policy is to keep copies and return the originals to you whenever possible. If I keep originals, I will return them to you when my engagement ends or is terminated. I will keep all files related to my engagement by you for five years after it ends or is terminated before destroying them.

    This agreement may be terminated by either party with or without cause, effective immediately upon written notice to the non-terminating party. However, it is understood that if this agreement is terminated by either party, I will be entitled to all fees earned and expenses incurred through the termination date.

    You will be required to attend the first meeting of creditors and bring your driver's license and Social Security cards.

1

Enclosed are certain notices which you need to read and understand. Included is a notice concerning the various kinds of bankruptcy cases which you may file, and notices pursuant to 11 U.S.C. § 527(a)(1) and (2).

You are required to take credit counseling from a provider approved by the bankruptcy court. It will cost you about $25.00 and must be done before we file your case. I will discuss this requirement with you when we meet. In addition, you must take financial management training while your case is pending. We'll discuss that also. It also will cost you about $25.00 each.

In addition, enclosed is a Credit Report Order Form and Consent Release and Automated Authentication Questionnaire. Please fill out the forms and return them to me so that I can download your credit report into my bankruptcy software. This will greatly simplify the process. Please note I'll need two forms of identification for my file.

This agreement shall not be amended unless in writing and signed by both parties.

If this accurately reflects your understanding of our agreement, please sign below and return a copy to me in the enclosed stamped, self-addressed envelope. I look forward to working with you.

Sincerely,

*[signature]*

Ned Dismukes


AGREED TO:

*[signature]*

Joe Minardi

**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE: )
)
EMANUEL JOSEPH MINARDI, ) CASE NO. 08-11774
) Chapter 7
Debtor. )

# UNSWORN DECLARATION

STATE OF OKLAHOMA )
) SS.
COUNTY OF TULSA )

I, Joe Minardi, being of lawful age and competent to give this Unsworn Declaration, state:

1. I have personal knowledge of all matters addressed in this Unsworn Declaration.

2. I am the debtor in the above-captioned bankruptcy case.

3. I met with D.E. Dismukes ("Dismukes") on or about July 1, 2008, to discuss filing a Chapter 7 bankruptcy.

4. As a result of that meeting, I hired Dismukes to represent me in filing my bankruptcy.

5. Dismukes advised me that he had a policy of not negotiating reaffirmation agreements on behalf of debtors due to the potential for liability on the debt if the debtor defaulted.

6. Dismukes explained to me that one of the purposes of filing a Chapter 7 bankruptcy was to get a discharge from my debts.

7. Dismukes further explained to me that if I reaffirmed a debt, I would be liable for it even though I had gotten a discharge.

8. Dismukes told me that I did not have to reaffirm any debts, but I felt it was in my best interest to reaffirm my debt to Nissan Motor Acceptance Corporation. That debt concerns a truck which I use in my home remodeling business.

1

9. At the time I signed the Bankruptcy Engagement Letter with Dismukes, I understood that he would not represent me in negotiating reaffirmation agreements and the consequences of signing a reaffirmation agreement. That was acceptable to me.

10. The terms of my reaffirmation agreement with Nissan Motor Acceptance Corporation require me to continue making the same payments on my truck which I made before filing my bankruptcy.

11. I did not negotiate the reaffirmation agreement. It was prepared by Nissan Motor Acceptance Corporation. I simply signed it in the appropriate places, filed out the parts I had to fill out, and mailed it back to Nissan.

I declare under penalty of penalty of perjury that the foregoing is true and correct. Executed on November 11, 2008.

Joe Minardi

2