## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:

EMANUEL JOSEPH MINARDI,

Debtor.

Filed / Docketed
January 23, 2009

Case No. 08-11774-M
Chapter 7

### MEMORANDUM OPINION

Since the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")[1] a little over three years ago, the care and feeding of reaffirmation agreements has moved from the realm of simplicity to the kingdom of complexity. Many debtors' counsel have attempted to wash their hands of the matter, leaving their clients (and, to a lesser degree, the courts) to fend for themselves. The issue before the Court today is whether counsel may exclude the negotiation of and/or advice concerning reaffirmation agreements from the package of services rendered to a Chapter 7 debtor. Until a court of controlling authority rules otherwise, the answer here is no. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1334(b).[2] Reference to the Court of this bankruptcy case is proper pursuant to 28 U.S.C.A. § 157(a). This is a core

---

[1] Pub. L. No. 109-8, 119 Stat. 23 (2005).

[2] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq*. (West 2009). Unless otherwise noted, all references to "Rules" are to the Federal Rules of Bankruptcy Procedure, as amended, effective December 1, 2008 (West 2009). All other references to federal statutes and rules are also to West 2009 publications.

proceeding as contemplated by 28 U.S.C.A. § 157(b)(2)(A) and(O).

## Findings of Fact

On August 1, 2008, Emanuel Joseph Minardi ("Debtor") filed a petition for relief under Chapter 7 of the United States Bankruptcy Code.  The petition was signed and filed by D.E. Dismukes ("Dismukes") of Dismukes Law Office as attorney for Debtor.  Dismukes is a member in good standing of the Oklahoma bar and is admitted to practice in this District.  He is therefore eligible to practice before this Court pursuant to local rule.[3]  Dismukes remains counsel of record for Debtor.

Pursuant to § 329(a) and Rule 2016, Dismukes filed a disclosure of the compensation he has received in connection with this case (the "Disclosure").  The Disclosure indicates that he agreed to accept, and was paid, $1,000 for his representation of Debtor.  The Disclosure was submitted using a standard form containing the following recitations:

> In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
>> a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
>> b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
>> c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
>> d. [Other provisions as needed]
>>> *Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.*
>
> By agreement with the debtor(s), the above-disclosed fee does not include the following service:

---

[3] Bankr. N.D. Okla. Local Rule 9010-1(A), (E).

> *Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding, and reaffirmation agreements*[.][4]

The Disclosure reflects Dismukes's general policy of providing no advice to his clients regarding whether to enter into a reaffirmation agreement. Dismukes does not sign any reaffirmation agreements for fear that under BAPCPA he will be exposed to personal liability to a creditor by virtue of making a certification that a debtor can perform the obligations created under the agreement. Dismukes is not the only attorney who practices before the Court that excludes the negotiation and review of reaffirmation agreements from the scope of services provided to debtors.

Debtor's schedules reflect a single secured creditor, Nissan Motor Acceptance Corporation ("Nissan"), holding a secured claim on a 2007 Nissan truck (the "Truck").[5] At the time the petition was filed, Debtor indicated an intention to reaffirm the debt to Nissan.[6] On September 15, 2008, a reaffirmation agreement between Debtor and Nissan (the "Agreement") was filed with the Court.[7] Although not identical, the format of the Agreement is substantially similar to Form 240A, a reaffirmation agreement form provided by the Administrative Office of the U.S. Courts. The Agreement was executed by both Debtor and a representative of Nissan and meets all of the requirements of § 524(c) to allow Debtor to reaffirm the debt on the Truck, except that it was not accompanied by an affidavit or declaration by Dismukes. Instead, the Agreement was accompanied by a motion for Court approval of the Agreement. That motion asserted that Debtor was "not

---

[4] *Docket No. 1* at 32. Material added by Dismukes to the form is shown in italics.

[5] *See Schedule D*, *Docket No. 1* at 13.

[6] *See Chapter 7 Individual Debtor's Statement of Intention*, *Docket No. 1* at 31.

[7] *Docket No. 10*. Although the collateral description in the Agreement is slightly different than in the Debtor's schedules, they each appear to reference the same vehicle.

3

represented by an attorney in connection with" the Agreement. As a result, the Court set the Agreement for hearing.

At the hearing, Dismukes informed the Court that, although he did explain the legal effect and consequences of entering into a reaffirmation agreement to Debtor, he did **not** assist Debtor in negotiating the Agreement.[8]  As a part of his post-hearing brief, Dismukes submitted a copy of the engagement letter that served as the employment contract between himself and Debtor.  That letter states

> I [Dismukes] will charge you [Debtor] a flat fee to assist you in preparing your Chapter 7 bankruptcy petition and schedules, and represent you at the first meeting of creditors.  You've given me a check in the amount of $1,000.00.  I may charge you up to $1,500.00 depending on the complexity of your case.  The flat fee also covers negotiations with secured creditors to reduce their claims to market value, exemption planning, and preparation and filing of motions pursuant to 11 U.S.C. § 522(2)(A) for avoidance of liens on household goods.  I will deposit the funds in my trust account and will earn my fee when your bankruptcy is filed.  The flat fee does not cover the cost of any adversary proceedings or other actions which may be filed in connection with your bankruptcy, including dischargeability actions, judicial lien avoidances, and relief from stay actions, or negotiation of reaffirmation agreements. **You may retain me to represent you in those matters, except for reaffirmation agreements, subject to a mutually agreeable fee arrangement.  You will have to negotiate your own reaffirmation agreements**.[9]

In an affidavit submitted to the Court, Debtor stated that he understood and accepted the exclusion of reaffirmation agreements from the scope of Dismukes's representation.

To the extent the "Conclusions of Law" contain any items that should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

---

[8]  At all times during this case, Dismukes has dealt with the Court in an honest and straightforward manner.  Nothing contained in this Memorandum Opinion is meant to cast Dismukes in any manner of unfavorable light.  This is a case of first impression before this Court.

[9]  *Brief, Docket No. 27,* Exhibit A at 10 (emphasis added).

**Conclusions of Law**

"Unless one of the exceptions enumerated in 11 U.S.C. § 523 applies, a Chapter 7 debtor receiving a discharge under 11 U.S.C. § 727 is relieved of all in personam liability for debt that arose before the date of the order for relief."[10]  As with every rule, exceptions exist.  Section 524(c) allows a debtor to enter into a reaffirmation agreement, which is a voluntary agreement between a debtor and the holder of a claim that allows the debtor to reassume in personam liability for a debt that would otherwise be dischargeable in the bankruptcy case.  "A reaffirmation agreement is the only means by which a dischargeable debt may survive a Chapter 7 discharge."[11]

Sections 524(c) and (d) contain a "checklist" of requirements, which serve as "safeguards against abusive creditor practices," that must be met in order to have an enforceable reaffirmation agreement.[12]  Those requirements include, but are not limited to: 1) entry into the agreement prior to the entry of an order of discharge; 2) timely receipt by the debtor of disclosures found in § 524(k); 3) absence of rescission of the agreement by the debtor within a specified time frame; and 4) filing of the agreement with the court.[13]  An additional requirement, found in § 524(c)(3) and of particular relevance in this case, is that:

---

[10]  *In re Schott*, 282 B.R. 1, 5 (10th Cir. BAP 2002) (footnote omitted).

[11]  *Id.* at 6.

[12]  *Id.  See also In re Laynas*, 345 B.R. 505, 510 (Bankr. E.D. Pa. 2006); David B. Wheeler & Douglas E. Wedge, *A Fully Informed Decision: Reaffirmation, Disclosure and the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 Am. Bankr. L.J. 789, 790 (2005).

[13]  § 524(c)(1)–(4).  Additionally, § 524(m) introduces an added layer of court review when a reaffirmation agreement creates a presumption under § 524(k)(6)(A) that it would impose an undue hardship on the debtor.  Because the Court concludes that the Agreement is unenforceable on other grounds, it does not reach a review under § 524(m).

5

(c) An agreement between a holder of a claim and the debtor . . . is enforceable . . . only if—

* * *

> (3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of ***the attorney that represented the debtor during the course of negotiating an agreement under this subsection***, which states that—
>
>> (A) such agreement represents a fully informed and voluntary agreement by the debtor;
>>
>> (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and
>>
>> (C) the attorney fully advised the debtor of the legal effect and consequences of—
>>
>>> (i) an agreement of the kind specified in this subsection; and
>>> (ii) any default under such an agreement [.][14]

This provision means that "if the debtor is represented by counsel, the agreement ***must*** be accompanied by an affidavit of the debtor's attorney" attesting to the referenced items before the agreement will have legal effect.[15]  Section 524(d) adds additional requirements if a debtor "***was not represented by an attorney during the course of negotiating such agreement***."[16]  In that situation, the court is required to hold a hearing during which it must make certain disclosures to the debtor regarding the voluntary nature and legal effect of the agreement.  When the debt is not a consumer debt secured by real property, the court must also determine whether the agreement imposes an undue

---

[14]  § 524(c)(3) (emphasis added).

[15]  *In re Schott*, 282 B.R. at 6 n.5 (emphasis added).

[16]  § 524(d) (emphasis added).

6

hardship and is in the best interest of the debtor.[17]  Strict compliance with these requirements is

mandatory, and an agreement that fails to fully comply is void and unenforceable.[18]

Section 524(k) requires the following disclosures, among others, to be given to the debtor in

conjunction with the reaffirmation of a debt:

> 3. *If you were represented by an attorney during the negotiation of your reaffirmation agreement*, the attorney must have signed the certification in Part C.

> 4. *If you were not represented by an attorney during the negotiation of your reaffirmation agreement*, you must have completed and signed Part E.

> * * *

> 6. *If you were represented by an attorney during the negotiation of your reaffirmation agreement*, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D.

> 7. *If you were not represented by an attorney during the negotiation of your reaffirmation agreement*, it will not be effective unless the court approves it. The court will notify you of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.[19]

When combined with the statutory language of § 524(c), these mandatory disclosures make it clear

that *whether an attorney represented a debtor during the course of negotiating a reaffirmation*

---

[17] *Id.*; § 524(c)(6).  *See also In re Schott*, 282 B.R. at 6 n.5.

[18] *Sweet v. Bank of Okla. (In re Sweet)*, 954 F.2d 610, 612 (10th Cir. 1992) ("The reaffirmed debt is enforceable only if certain enumerated conditions are met, including compliance with § 524(d)."); *In re Jamo*, 283 F.3d 392, 398 (1st Cir. 2002) (courts require strict compliance with conditions enumerated in statute); *In re Laynas*, 345 B.R. 505, 510–11 n.4 (Bankr. E.D. Pa. 2006) (same).

[19] § 524(k)(3)(J)(i) (emphasis added).

7

*agreement* is of critical importance in determining when and if the agreement becomes effective, and whether the Court has any remaining obligations under § 524(d) with respect to the agreement after it is filed.[20]  If a debtor was represented during the course of negotiating a reaffirmation agreement, but debtor's counsel is unable or unwilling to make the required certifications, then the agreement does not satisfy § 524(c)(3) and is unenforceable.[21]  If the debtor was not represented by an attorney, the Court must hold an additional hearing under § 524(d) and make certain findings under § 524(c)(6) before the agreement is enforceable.[22]

Finding a debtor to be represented in a bankruptcy case, the Court would ordinarily conclude that duly employed counsel gave the debtor the required cautionary disclosures and assisted the debtor with negotiating any reaffirmation agreements.  Failure to sign the declaration under § 524(c)(3) would normally be taken as a clear signal to the Court that, in counsel's opinion, the agreement imposes an undue hardship on the debtor or a dependent of the debtor, or is otherwise not in the debtor's best interest, and therefore should not be enforceable.  Except in unusual

---

[20]  *See In re Donald*, 343 B.R. 524, 527 (Bankr. E.D.N.C. 2006) ("Whether or not the debtors were represented by their attorney 'during' the negotiation of the reaffirmation agreement is relevant to whether or not the court has the authority to approve or disapprove the agreement.").

[21]  *See In re Husain*, 364 B.R. 211, 214 (Bankr. E.D. Va. 2007) ("The Bankruptcy Code contemplates that counsel's failure to certify a reaffirmation agreement terminates further consideration of the client's ability to reaffirm the debt."); *In re Rodriguez*, No. 08-12039, 2008 WL 2509373 at *1 (Bankr. E.D. Va. June 23, 2008) ("Court review of the agreement is not required unless counsel first makes all three certifications as required in § 524(c)(3)."); *In re Isom*, No. 07-31469, 2007 WL 2110318 at *3 (Bankr. E.D. Va. July 17, 2007) ("Counsel's failure to execute the necessary certification ends the reaffirmation process. The Court is not authorized to approve the Reaffirmation Agreement without counsel's endorsement. The failure of Debtor's counsel to endorse Part C of the Reaffirmation Agreement, in and of itself, renders the agreement unenforceable.").

[22]  *In re Schott*, 282 B.R. at 6 n.5.

8

circumstances, the Court will treat counsel's decision whether to endorse a reaffirmation agreement as definitive.[23]

Dismukes has not filed a motion to withdraw as counsel for Debtor and continues to appear before this Court on behalf of Debtor in an unrelated matter.  Although he remains counsel of record in this case, Dismukes did not assist Debtor in the negotiation of the Agreement.[24]  He suggests that Debtor has effectively acted without counsel, or *pro se*, in the presentation of the Agreement to the Court, and that the Agreement may be rehabilitated by a hearing under § 524(d) and subsequent Court approval.

### Exclusion of Advice Regarding Reaffirmation of Debts from the Scope of Attorney Services

After careful consideration, the Court concludes that Dismukes's attempt to limit his services to exclude negotiation of reaffirmation agreements is an impermissible limitation on his representation of Debtor.  The Court bases its conclusion on two foundations.  First, and most importantly, the decision to reaffirm an otherwise dischargeable debt plays a critical role in the

---

[23]  The Court notes that § 524(m) was recently added to the Code, which requires court review if the debtor's budget indicates that a "presumption of undue hardship" exists.  *See* BAPCPA, Pub. L. No. 109-8, 119 Stat. 23, § 203 (2005). *See also In re Calabrese*, 353 B.R. 925, 926 (Bankr. M.D. Fla. 2006) ("A presumption of undue hardship occurs when the debtor does not have sufficient funds to make the required reaffirmation payments.").  In that case, the debtor or counsel will be given an opportunity to explain to the Court why a particular agreement does not impose an undue hardship on the debtor, despite a showing in the record that the debtor cannot afford to make the required payment. § 524(m).  *See In re Wilson*, 363 B.R. 220, 224 (Bankr. D.N.M. 2007); *In re Laynas*, 345 B.R. 505, 512 (Bankr. E.D. Pa. 2006) (review under § 524(m) is required even where debtor is represented by counsel). There has been no showing that the presumption applies in this case.

[24]  Dismukes is not alone in his attempt to place limitations on services provided to debtors in cases before this Court.  The Court wishes to make clear that nothing in this opinion should be taken as a criticism of the integrity of Dismukes or his law practice.  His conduct in this case appears to be based on a mistaken belief that such an arrangement was commonplace and would be accepted by the Court.

bankruptcy process—so critical, that assistance with the decision must be counted among the

necessary services that make up competent representation of a Chapter 7 debtor.  Second, the Code

lays the responsibility for advising a debtor about the reaffirmation process and evaluating the effect

of each agreement at the feet of debtors' counsel.  The Court will not relieve counsel of this

responsibility.

> *The importance of the decision to reaffirm debt in the quest for a "fresh start"*

The United States Supreme Court has noted that

> a central purpose of the Code is to provide a procedure by which certain insolvent
> debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new
> opportunity in life with a clear field for future effort, unhampered by the pressure and
> discouragement of preexisting debt.'[25]

The bankruptcy discharge under Chapter 7 is often referred to as a debtor's "fresh start," and operates

as an injunction against creditors from collecting discharged debts as a personal liability.  Because

a debtor may wish to retain property on which a creditor holds a lien or security interest, § 524(c)

makes provision for the reaffirmation of such debt.  The United States Court of Appeals for the First

Circuit described the reaffirmation process as follows:

> Although reaffirmation is consensual in nature, the myriad safeguards erected by
> Congress reflect its recognition that a debtor's decision to enter into a reaffirmation
> agreement is likely to be fraught with consequence. In point of fact, reaffirmation
> represents the only vehicle through which an otherwise dischargeable debt can
> survive the successful completion of Chapter 7 proceedings. Moreover, once a debt
> is reaffirmed, the creditor can proceed to enforce its rights as if bankruptcy had not
> intervened. Because reaffirmation constitutes a debtor-invoked exception to the tenet
> that underpins the bankruptcy system-the "fresh start" principle-a reaffirming debtor
> must be afforded some protection against his own (potentially) short-sighted
> decisions.

---

[25] *Grogan v. Garner*,  498 U.S. 279, 286 (1991) (quoting *Local Loan Co. v. Hunt*, 292
U.S. 234, 244 (1934)).

Section 524(c) reflects Congress's intent to provide this protection, thereby safeguarding debtors against unsound or unduly pressured judgments about whether to attempt to repay dischargeable debts. To cloak debtors in this protective garb, courts generally have insisted that reaffirmation agreements strictly comply with the conditions enumerated in the statute. By like token, courts have insisted upon a showing that a reaffirmation agreement is not the product of abusive creditor practices.[26]

One of the safeguards provided under § 524(c) is that where a debtor is represented by an attorney, he or she must evaluate whether an agreement to reaffirm a debt will impose an undue hardship on the debtor and inform the court of that assessment.[27] If the attorney determines that no such hardship is imposed on the debtor, then he or she should sign the statement set out in Part C of the official reaffirmation agreement form.[28] Where the attorney is unable to endorse that statement, the agreement will not be enforceable.

Attorneys that practice before this Court are governed by the Oklahoma Rules of Professional Conduct ("Oklahoma Rules").[29] Primary among those rules is that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill,

---

[26] *In re Jamo*, 283 F.3d 392, 398 (1st Cir. 2002) (citations omitted).

[27] § 524(c)(3).

[28] *See* § 524(k)(5)(A). The statement, which is based on the declaration required under § 524(c)(3), reads:

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

*See also In re Melendez*, 224 B.R. 252, 258 (Bankr. D. Mass. 1998) (describing interplay between § 524(c)(3) and Rule 9011).

[29] Bankr. N.D. Okla. Local Rule 9010-1(E). The Oklahoma Rules are found in Okla. Stat. tit. 5, Ch. 1, App. 3-A (West 2001 & Supp. 2009).

thoroughness, and preparation reasonably necessary for the representation."[30]  The Oklahoma Rules

also require that "[a] lawyer shall: . . . reasonably consult with the client about the means by which

the client's objectives are to be accomplished."[31]  Courts have not hesitated to find negotiation of

reaffirmation agreements among a set of core services that must be provided to a consumer debtor

in order to provide competent representation in a Chapter 7 context.[32]

---

[30]  Oklahoma Rule 1.1.

[31]  Oklahoma Rule 1.4(a)(2).

[32]  *In re DeSantis*, 395 B.R. 162, 169 (Bankr. M.D. Fla. 2008); *In re Carvajal*, 365 B.R. 631, 632 (Bankr. E.D. Va. 2007) ("[O]nce [counsel] makes an appearance in a bankruptcy case, he has made an appearance for all matters in that bankruptcy case and must appear with respect to them unless otherwise excused by the court. Reaffirmation agreements are an integral part of chapter 7 representation of debtors. By accepting a chapter 7 case, counsel is accepting all aspects of the case including counseling with respect to reaffirmation agreements, negotiations with creditors with respect to reaffirmation agreements, and representing debtors in court with respect to reaffirmation agreements."); *Hodges v. Armada (In re Hodges)*, 342 B.R. 616, 620–21 (Bankr. E.D. Wash. 2006) ("[T]he post filing services are within what an attorney could reasonably and commonly expect in the handling of a Chapter 7 bankruptcy; responding to the U.S. Trustee inquiries, dealing with stay relief requests, and discussion of reaffirmation agreements."); *In re Egwim*, 291 B.R. 559, 573 (Bankr. N.D. Ga. 2003) ("[T]his Court considers the fundamental and core obligations necessarily imposed by an engagement to represent a consumer debtor in a chapter 7 bankruptcy case to include representation with regard to reaffirmation or surrender of real estate securing obligations to creditors and representation with regard to the grant of the discharge and any exceptions thereto. As discussed above, these matters are at the very center of the bankruptcy case."); *In re Castorena*, 270 B.R. 504, 530 (Bankr. D. Idaho 2001) ("[W]hen accepting an engagement to represent a debtor in relation to a bankruptcy proceeding, an attorney must be prepared to assist that debtor through the normal, ordinary and fundamental aspects of the process.  These include . . . counseling in regard to § 521(2) and the reaffirmation, redemption, surrender or retention of consumer goods securing obligations to creditors, and assisting the debtor in accomplishing those aims.").  *See also Redmond v. Lentz & Clark (In re Wagers)*, 340 B.R. 391, 398 (Bankr. D. Kan. 2006) ("A Chapter 7 debtor's attorney must also continue to help the debtor postpetition in order to insure the debtor receives as much of a fresh start as he or she is entitled to, and to fulfill the debtor's probable and reasonable expectations under their prepetition contract."); *In re Isom*, No. 07-31469, 2007 WL 2110318 at *3 (Bankr. E.D. Va. July 17, 2007) ("Counsel in this matter has not been granted leave to withdraw from the representation of her client. Accordingly, at Hearing the Court found that the Debtor, at all relevant times, was represented by counsel in this case.").

Attorneys representing individual debtors in consumer cases filed under Chapter 7 of the Bankruptcy Code have certain essential duties they must perform. They must help debtors file the necessary petition, schedules, statements, and pleadings. They must attend the scheduled meeting of creditors. Most relevant here, attorneys representing consumer debtors must advise and assist their clients in complying with their responsibilities assigned by Section 521 of the Bankruptcy Code, *including helping their clients decide whether to surrender collateral or instead to reaffirm or to redeem secured debts. This obligation is one of a debtor's attorney's primary and essential responsibilities, particularly after the passage of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act, which made the decision more difficult and more complicated. If a hearing is scheduled on a reaffirmation agreement, the attorney must attend the hearing with his or her clients. If an attorney cannot perform these necessary duties, the attorney should not accept bankruptcy cases.*

Individual debtors, often unfamiliar with legal terminology and the potentially negative consequences of reaffirming a debt, greatly benefit from informed advice in making their decision and need assistance when, as here, the reaffirmation decision is not straightforward. A debtor who reaffirms a secured debt agrees to repay that creditor over time. Once a debt is reaffirmed, if the debtor is unable to make the regular monthly payments, the debtor is liable for the return of the collateral as well as the repayment of the remaining deficiency balance due. For debtors who consider reaffirming debts associated with collateral valued at far less than the debt, such as the debtors in this case, the decision to reaffirm may be a poor choice. Attorneys must explain the rules and assist debtors in making good decisions, even if it requires giving up treasured cars or other property.

In a typical case, debtors' attorneys regularly advise their clients of their obligations, review reaffirmation agreements, assist their clients in completing such agreements or in making other arrangements, and, in sum, work with their clients to ensure compliance with Section 521 of the Bankruptcy Code. On more frequently occurring occasions, courts set hearings on questionable reaffirmation agreements to determine whether or not they are in the best interest of the debtor. If a hearing is set, debtor's attorneys attend the reaffirmation hearing with their clients.[33]

---

[33] *In re DeSantis*, 395 B.R. at 169 (emphasis added). As Dismukes correctly points out, the facts before the court in *In re Desantis* are distinguishable because the disclosure of compensation filed by the attorney in that case specifically included negotiation of reaffirmation agreements among the contracted services; the attorney later refused to assist his client in those negotiations. This Court finds this factual difference to be insignificant. The court in *In re DeSantis* made it abundantly clear that it saw negotiation of reaffirmation agreements as a core service, and that any refusal or inability to represent a debtor in a reaffirmation decision would likely require the attorney to totally withdraw from representation. *Id.*

The Court finds this analysis to be sound and adopts it *in toto*.  This Court will not allow counsel to offer services in a piecemeal fashion that leaves debtors vulnerable and unrepresented at the exact moment they need professional legal advice, especially for routine and fully anticipated matters.  Let there be no doubt: in the eyes of this judge, counsel for a debtor may **not** exclude advice regarding and negotiation of reaffirmation agreements from the scope of services provided to a Chapter 7 debtor.  Counsel that are unwilling to undertake and follow through on such duties should not accept employment in a Chapter 7 case, or if currently employed, should withdraw from all further representation of the debtor.

Dismukes argues that Oklahoma Rule 1.2 allows him to exclude particular services, specifically negotiation of reaffirmation agreements, from his representation of debtors, as long as they consent to the limitation.  Oklahoma Rule 1.2(c) states that "[a] lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent."[34]  The Court does not read this rule as granting an attorney permission to exclude whatever services he or she may find too time-consuming, onerous, or fraught with potential liability. The limitation of services is subject to two important conditions precedent: 1) the limitation must be *reasonable under the circumstances*; and 2) the debtor must give *informed consent*.  These conditions are further explained in the comments to Oklahoma Rule 1.2.

> **Agreements Limiting Scope of Representation**
> [6] The scope of services to be provided by a lawyer may be limited by agreement with the client or by the terms under which the lawyer's services are made available to the client. When a lawyer has been retained by an insurer to represent an insured, for example, the representation may be limited to matters related to the insurance coverage. A limited representation may be appropriate because the client has limited objectives for the representation. In addition, the terms upon which representation is

---

[34] Oklahoma Rule 1.2.

undertaken may exclude specific means that might otherwise be used to accomplish the client's objectives. Such limitations may exclude actions that the client thinks are to [sic] costly or that the lawyer regards as repugnant or imprudent.

[7] ***Although this Rule affords the lawyer and client substantial latitude to limit the representation, the limitation must be reasonable under the circumstances.*** If, for example, a client's objective is limited to securing general information about the law the client needs in order to handle a common and typically uncomplicated legal problem, the lawyer and client may agree that the lawyer's services will be limited to a brief telephone consultation. Such a limitation, however, would not be reasonable if the time allotted was not sufficient to yield advice upon which the client could rely. ***Although an agreement for a limited representation does not exempt a lawyer from the duty to provide competent representation,*** the limitation is a factor to be considered when determining the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. See Rule 1.1.[35]

Oklahoma Rule 1.0 further defines the relevant terms as follows:

(e) "Informed consent" denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.

(h) "Reasonable" or "Reasonably" when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer.[36]

Herein lies the crux of the problem. Many debtors who file bankruptcy under Chapter 7 hold property that is subject to secured liens. Whether to surrender or redeem the property or reaffirm the underlying debt constitutes one of the most critical decisions faced by a debtor. It has a direct and significant effect upon a "fresh start" because 1) debt that is reaffirmed remains the personal liability of the debtor; and 2) creditors whose debt is reaffirmed have all of the rights and remedies available to them that were available prior to the filing of the bankruptcy case. It is unreasonable to conclude that a typical debtor that seeks out the assistance of an attorney to navigate through a bankruptcy case

---

[35] Oklahoma Rule 1.2, Comments (emphasis added).

[36] Oklahoma Rule 1.0 (e, h).

15

will not require further assistance in making such a critical decision as whether to reaffirm a debt. Similarly, if a debtor, in consultation with counsel, determines that reaffirmation of a debt is the best course, it is not reasonable that he or she will then be left to proceed without assistance to negotiate favorable terms with the creditor.[37]

*The Code places responsibility for reaffirmation agreements with debtors' counsel*

As originally enacted in 1978, the Bankruptcy Code required courts to hold a hearing in every bankruptcy case of an individual, at which debtors were required to appear.[38] If a debtor wished to reaffirm any prepetition debt, the court had to inform him or her of the legal effect and consequences of reaffirmation, and approve any agreement as being in the debtor's best interest and not imposing an undue hardship.[39] In 1984, § 524(c) was amended to limit the requirement for court approval to those agreements where the debtor was *pro se*.[40] In place of court approval, the 1984 Amendment

_____

[37] Having found Dismukes's limitation of services in a Chapter 7 bankruptcy case to be unreasonable, the Court does not reach the question of informed consent.

[38] 11 U.S.C. § 524(d) (1978).  *See generally In re Melendez*, 224 B.R. 252, 254–57 (Bankr. D. Mass. 1998) (summary of the statutory and legislative history of reaffirmation agreements).

[39] *See e.g.*, Senate Debate on Compromise Bill, 124 Cong. Rec. S17403–34, S17413 (daily ed. Oct. 6, 1978) ("Every reaffirmation to be enforceable must be approved by the court[.]"), *reprinted in* D Collier on Bankruptcy App. Pt. 4-2558 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).  *See also In re Pendlebury*, 94 B.R. 120, 123 n.4 (Bankr. E.D. Tenn. 1988).  Court approval was not required to reaffirm a consumer debt that was secured by real property. § 524(c)(6)(B).

[40] The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353 (1984) (the "1984 Amendment"); *In re Pendlebury*, 94 B.R. at 124 ("Congress' intent that the court rely upon the declaration and affidavit filed by counsel is made manifest under the 1984 Amendments by removal of the requirement of court approval except as to reaffirmation agreements entered into by pro se debtors."); *In re Melendez*, 224 B.R. at 257 ("[B]ankruptcy courts are no longer required to approve all reaffirmations of debts not secured by real property, only those where the debtor is not represented by counsel in negotiating the agreement.").

16

introduced a requirement that "the attorney that represented the debtor during the course of negotiating an agreement under [§ 524(c)]" file a declaration or affidavit stating that the agreement represented a "fully informed and voluntary agreement by the debtor" and did "not impose an undue hardship on the debtor or a dependent of the debtor."[41]  This marked the beginning of a shift of the responsibility for oversight and approval of reaffirmation agreements from courts to debtors' counsel.[42]  In 1986, Congress eliminated the requirement in § 524(d) that the court hold a hearing in every case.[43]  In 1994, § 524(d) was further amended to clarify that hearings are only required when a debtor is not represented by an attorney in the negotiation of the agreement.[44]  In conjunction with the elimination of the requirement to hold a hearing for represented debtors, § 524(c)(3)(C) was added, which requires that counsel include a statement that he or she has "fully advised the debtor of the legal effect and consequences of" the agreement and any default thereof.[45]  Thus, the transfer of responsibility to debtors' counsel for both oversight and approval of reaffirmation agreements was complete.

Problems persisted because the term "undue hardship" was not well defined, and concerns

---

[41]  Pub. L. No. 98-353, § 308 (1984).

[42]  *See* Attorney Liability in Bankruptcy 262 (Corinne Cooper & Catherine E. Vance eds., Am. Bar Assoc. 2006).

[43]  Bankruptcy Judges, U.S. Trustees, & Family Farmer Bankruptcy Act of 1986, Pub. L. No. 99-554, § 282 (1986).

[44]  Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, §103 (1994). *See* 140 Cong. Rec. H10764 (daily ed. Oct. 4, 1994) (floor statements on the Bankruptcy Act of 1994) ("This section clarifies that a separate hearing is not mandatory in order to reaffirm a debt where the debtor is adequately represented by counsel."), *reprinted in* E-1 Collier on Bankruptcy App. Pt. 9-72 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

[45]  Pub. L. No. 103-394, § 103 (1994).

soon developed that debtors' counsel were approving reaffirmation agreements for debt that their

clients clearly could not pay.[46]  Courts disagreed over what role they would play in that situation.

While some courts found a statutory basis to disapprove an agreement filed by a represented debtor,[47]

others courts, having more confidence in the diligence of attorneys in carrying out their duties,

limited the review of agreements with a § 524(c)(3) declaration to the standard set out in Rule 9011.[48]

The relevant portion of Rule 9011 states:

**(b) Representations to the court**
By presenting to the court (whether by signing, filing, submitting, or later advocating)
a petition, pleading, written motion, or other paper, an attorney or unrepresented party
is certifying that to the best of the person's knowledge, information, and belief,
formed after an inquiry reasonable under the circumstances,—

* * *

(3) the allegations and other factual contentions have evidentiary support or,
if specifically so identified, are likely to have evidentiary support after a
reasonable opportunity for further investigation or discovery; and

---

[46]  For example, the court in *In re Melendez* discussed the situation where counsel signed
the statement under § 524(c)(3) despite clear evidence in the record that debtors were financially
unable to make the payments required under the agreement and would face a substantial hardship
going forward.  224 B.R. at 259.

[47]  *See e.g.*, *In re Melendez*, 224 B.R. at 260 ("[B]ankruptcy courts continue to have 'an
independent obligation to review reaffirmation agreements,' even where they are accompanied
by a § 524(c)(3) attorney declaration.") (quoting *In re Hovestadt*, 193 B.R. 382, 386 (Bankr. D.
Mass. 1996)).  Even courts that found an independent obligation to review agreements filed by
represented debtors, *e.g.*, the court in *In re Melendez*, tended to exercise that authority through
the rubric of Rule 9011.  *See id* at 257–59.

[48]  *See Sweet v. Bank of Okla. (In re Sweet)*, 954 F.2d 610, 612 (10th Cir. 1992) (court
had no authority under § 524(d) to disapprove a reaffirmation agreement that included the
required declaration by counsel and otherwise met the requirements of § 524(c); declaration
under § 524(c)(3) held to standard of Rule 9011); *In re Schott*, 282 B.R. 1, 9 (10th Cir. BAP
2002) ("[A] bankruptcy court has no power to override counsel's approval of a reaffirmation
agreement.") (citing *In re Sweet*). *See also In re Pendlebury*, 94 B.R. at 124 ("The court would
not hesitate in appropriate circumstances to utilize its equitable powers and interject itself into
the reaffirmation process. Such a situation should, however, never occur where a debtor is
represented by counsel.").

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.[49]

Under this rule, debtors' counsel "represents and attests to the court that he or she has conducted 'an inquiry reasonable under the circumstances' into whether the obligation imposed by the reaffirmation would impose an undue hardship on the debtor or the debtor's dependents."[50]  Likewise, "an attorney by affixing his signature to the declaration or affidavit required by § 524(c)(3) certifies that attorney's participation in the reaffirmation process and the accuracy of the representations contained therein to the best of the attorney's knowledge, information and belief."[51]  Through this mechanism, courts have maintained a measure of oversight of the reaffirmation agreement process without directly intervening in the approval or disapproval of specific agreements when debtors are represented by counsel.

The fact that courts have continued to monitor the reaffirmation process through Rule 9011 does not relieve counsel of the obligation under the Code to advise clients regarding what debt, if any, to reaffirm, and then to evaluate whether the agreements reached will impose an undue hardship. Counsel, having undertaken the representation of a debtor in a Chapter 7 case, may not escape these responsibilities.  Quite the opposite.  Courts have continued to emphasize that "if the debtor is represented by counsel, the agreement ***must*** be accompanied by an affidavit of the debtor's attorney"[52] and that "a represented debtor ***cannot*** reaffirm a debt unless the debtor's attorney provides

---

[49]  Rule 9011(b).

[50]  *In re Melendez*, 224 B.R. at 258 (quoting Rule 9011(b)).

[51]  *In re Pendlebury*, 94 B.R. at 124.

[52]  *In re Schott,* 282 B.R. at 6 n.5 (emphasis added).

19

the declaration or affidavit required under 11 U.S.C. § 524(c)(3)."[53]  Dismukes, as attorney of record

for Debtor, has a duty under the Code to represent Debtor in the negotiation of any reaffirmation

agreements he wishes to enter.  An agreement filed by Debtor that does not contain the declaration

required by § 524(c)(3) is not effective.

At its core, Dismukes's refusal to negotiate reaffirmation agreements on behalf of debtors is

not based on economics concerning his fee, but is instead rooted in "the potential liability to the

creditor for the reaffirmed debt if the Debtor defaulted on it."[54]  As support for his concern, Dismukes

cites to an article titled *Nine Traps and One Slap: Attorney Liability under the New Bankruptcy*

*Law*,[55] published shortly after the passage of BAPCPA.  The authors of *Nine Traps* raise the specter

of attorney liability in the following passage:

> Among the substantial changes BAPCPA makes to reaffirmation agreements is a
> bizarre requirement for debtors' attorneys. In addition to the certification that has long
> been required in every reaffirmation agreement, if the agreement triggers the statutory
> presumption of hardship, the attorney has to go further, and give assurance that the
> client can perform the promise to pay the debt.  BAPCPA provides:

---

[53]  *In re Egwim*, 291 B.R. 599, 566 (Bankr. N.D. Ga. 2003) (emphasis added).  *See also
In re Jamo*, 283 F.3d 392, 403 (1st Cir. 2002) ("Absent counsel's approbation, no valid
reaffirmation could occur."); *In re Isom*, No. 07-31469, 2007 WL 2110318 at *2 (Bankr. E.D.
Va. July 17, 2007) ("The Bankruptcy Code does not offer a mechanism, however, for the Court
independently to approve a reaffirmation agreement under circumstances in which the debtor's
attorney has not executed the certification under Part C."); *In re Calabrese*, 353 B.R. 925, 926
(Bankr. M.D. Fla. 2006) ("If the debtor is represented by an attorney, according to § 524(k)(5),
the attorney ***must*** attest that the reaffirmation agreement is in the best interests of the debtor, and
that the agreement does not impose an undue hardship on the debtor.") (emphasis added); *In re
Davis*, 106 B.R. 701, 703 (Bankr. S.D. Ala. 1989) ("[T]he court must now ***only*** approve
agreements when the debtor was not represented by an attorney during the course of negotiating
the reaffirmation agreement.") (emphasis added).

[54]  *Brief, Docket No. 27* at 2.

[55]  Catherine E. Vance & Corinne Cooper, *Nine Traps and One Slap: Attorney Liability
under the New Bankruptcy Law*, 79 Am. Bankr. L.J. 283 (2005).

> If a presumption of undue hardship has been established with respect to [a reaffirmation] agreement, such certification shall state that in the opinion of the attorney, the debtor is able to make the payment. [§ 524(k)(5)(B)]

> Obviously, this creates a serious problem for the attorney.  If the client wants to reaffirm a debt, that is the client's decision, even if doing so flies in the face of the attorney's sound legal advice. After all, attorneys can't *force* their clients to do anything. But BAPCPA disregards this reality and goes a step further by requiring the attorney to certify that the debtor—who has a demonstrated *inability* to pay a reaffirmed debt—is somehow able to pay it. And the penalty for being wrong could be severe: liability to the creditor for what the debtor owes.[56]

The dire consequences predicted by the authors of *Nine Traps* apparently have yet to rear their ugly heads: BAPCPA has been the law of the land for over three years, and this Court is unaware of a single reported decision holding counsel personally liable for a debtor's failure to make payments under the terms of a reaffirmation agreement.  In any event, the potential existence of such liability does not supercede counsel's duties under the Bankruptcy Code or the Oklahoma Rules of Professional Conduct.

## Conclusion

As Debtor's attorney of record, Dismukes has undertaken a duty to provide core services and to represent Debtor before this Court until withdrawal is allowed.  Included in those core services is

---

[56] *Id.* at 291–92 (footnotes omitted).  The Court disagrees with the authors' interpretation of the attorney's declaration.  By signing Part C of a reaffirmation agreement, counsel has already made the statement that the agreement does not impose an undue hardship on the debtor. *See* § 524(c)(3), (k)(5)(A).  An endorsement of the additional statement under § 524(k)(5)(B) is merely a statement to the court that 1) a presumption is established under § 524(m) that the agreement will impose an undue hardship on the debtor, thereby alerting the Court to its obligation to conduct a further review under that section; and 2) despite the presumption created under § 524(m), counsel believes that circumstances exist, which should be set out for the Court in Part D of Form 240A, that the agreement will not, in fact, be an undue hardship on the debtor, and that the debtor is able to make the scheduled payments.  If counsel can make these statements, he or she should sign and check the appropriate boxes on the form.  If counsel is unable to make these statements, then Part C should not be signed.

the requirement that Dismukes represent and advise the Debtor with respect to reaffirmation agreements.  The Agreement, as currently filed, does not meet the mandatory requirements of § 524(c) due to the absence of a declaration by Dismukes and is therefore not effective.  If Debtor still wishes to reaffirm the debt to Nissan, he should seek the assistance of Dismukes.  Whether Dismukes endorses a new agreement should be based on whether he can make each of the declarations set out in Part C of Form 240A.  Parts (1) and (3) of the declaration state that he provided various disclosures and advice to Debtor.  Part (2) of the declaration involves an evaluation, under the standard set forth in Rule 9011—"an inquiry reasonable under the circumstances,"—that the agreement does not impose an undue hardship on Debtor or a dependent of Debtor.[57]  If Dismukes is able to make these declarations, the agreement may then be filed with the Court, which will satisfy an essential element toward making the agreement effective.  If Dismukes wishes to stand by his refusal to assist Debtor in the negotiation of a new agreement, or is otherwise unwilling or unable to complete his duties under the Code, he may petition the Court to withdraw from representation of Debtor.

The Agreement between Debtor and Nissan, *at Docket No. 10*, does not include the required declaration by D.E. Dismukes, Debtor's attorney of record.  As such, the Agreement does not meet the requirements of § 524(c)(3), is not effective, and may not be enforced.  Pursuant to Rule 4008(a), the parties are given until February 20, 2009, to file any additional reaffirmation agreements in this

---

[57] The Court wishes to dispel any notion that a debtor's attorney "must" sign every reaffirmation agreement requested by a debtor.  If the attorney feels a particular agreement will impose an undue hardship on the debtor or a dependent of the debtor—regardless of what the math says in Part D—then he or she should not sign Part C of Form 240A.  *See In re Isom*, No. 07-31469, 2007 WL 2110318 at *4 ("But no counsel should ever feel compelled to execute an attorney certification against counsel's better judgment.").

case.

A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 23rd day of January, 2009.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

5410.6

23